KATZ et al. v. KAISER.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

1. VENDOR AND PURCHASER—DEFECTIVE TITLE—UNSATISFIED MORTGAGE.
    A title is not defective because there is on record an unsatisfied mortgage which is apparently barred by the statute of limitations, and no fact is shown which would interrupt the running of the statute.

2. SAME—ENCROACHMENT ON STREET.
    A purchaser cannot refuse to take title because the house on the lot encroaches half an inch on the street, where such house has stood for 30 years without any objection to the encroachment.

3. SAME—ENCROACHMENT ON ADJOINING LOT—UNION OF TITLES.
    An objection by a purchaser of a city lot that the house on the lot encroaches several inches on an adjoining lot is not sustainable where it appears that both lots had formerly been owned by the same person, and that the vendor's title is under a mortgage executed by such former owner with covenants of warranty, the location of the house being conclusive on subsequent owners as to the extent of the lot.

4. SAME—INAPPRECIABLE ENCROACHMENT.
    An encroachment of one-fourth of an inch on an adjoining lot is so small as not to warrant denial of specific performance of a contract of purchase.

Appeal from special term, New York county.

Action originally brought by Abraham Katz and Louis Maier against Joseph Kaiser, for specific performance of a contract by which defendant agreed to purchase certain real estate from plaintiffs. Abraham Katz died pending the action, and Mary Katz, as executrix of his will, was substituted as plaintiff in his stead. There was a judgment in favor of plaintiffs, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

T. M. Tyng, for appellant.
Samson Lachman and Theodore Baumeister, for respondents.

RUMSEY, J. In March, 1895, Abraham Katz and Louis Maier made an agreement with the defendant to sell him a certain piece of property situated on Ninth street. When the time came for the execution of the conveyance, the defendant declined to take the property, for certain reasons, which will be more particularly stated hereafter, and refused to carry out the contract. This action was then brought by the executor of Katz and by Maier, to compel a specific performance on the part of the defendant of his contract to take the property. The case was tried at the special term, and resulted in a judgment for the plaintiffs, directing the specific performance of the contract, and from that judgment this appeal has been taken.

Two objections were made by the defendant to the title. The first was that there was an unsatisfied mortgage upon the property. The facts in relation to that mortgage, as they appear by the proofs, are that there is unsatisfied of record a mortgage, dated on the 7th day of January, 1839, and recorded on the 22d of February in the same year, to secure something over $1,500. It does not

appear by whom the mortgage was made, but for the purposes of this opinion it will be assumed, as it was assumed on the argument, that it was executed by some one who at that time had title to the property, as that was probably made to appear by the evidence upon the trial. The time when the mortgage became due does not appear, and therefore it must be assumed that it was payable on demand, and at its date. Martin v. Stoddard, 127 N. Y. 61, 63, 27 N. E. 285, 286. The cause of action, therefore, accrued before the 1st day of July, 1848, and the statute of limitations in force at that time applies to the cause of action upon this mortgage. Code Civ. Proc. § 414. That statute reads as follows:

"After the expiration of twenty years from the time a right of action shall accrue upon any sealed instrument for the payment of money, such rights shall be presumed to have been extinguished by payment, but such presumption may be repelled by proof of the payment of some part or by a written acknowledgment of the right of action within twenty years." 2 Rev. St. p. 301, § 48.

No proof that any payment had been made upon the mortgage was given at the trial, nor was any written acknowledgment of the right of action produced. The case, therefore, stands upon the presumption of extinguishment which is created by the statute. That presumption is undisputed in this case, and in view of it the court is required to assume that the mortgage had been extinguished, and was no longer an incumbrance upon the property. Belmont v. O'Brien, 12 N. Y. 394. The case just cited is precisely in point. That was a proceeding to compel a purchaser to take title to the property which he had bid off at a judicial sale. One objection to the title, among others, was that there was an unsatisfied mortgage which was an incumbrance upon the property. The mortgage had been due for something over 60 years, and the judge at the trial, relying upon the presumption of extinguishment created by the statute, cited above, held that the mortgage was no longer an incumbrance upon the property. His holding was affirmed by the court of appeals, which held that, under such circumstances, the burden of proving that a payment had been made to take it out of the statute was upon the person setting up the mortgage as an incumbrance, and, if that were not done, the presumption applied, and the mortgage must be held not to be an incumbrance.

The principal objection to this title, however, is that the lot which has been sold encroaches upon the street, and also upon the adjoining lot upon the west. It is claimed that the lot encroaches one-half inch upon the street. That is disputed by the evidence, and substantially disproved; but, if it existed, it would be of no importance. It appears from the evidence that the building has stood where it now does for over 30 years without objection on the part of anybody, and in such a case as that the fact that it projects a small portion of an inch upon the street is no valid objection to the title. Webster v. Trust Co., 145 N. Y. 275, 39 N. E. 964.

The objection is also taken that the building upon the lot encroaches something more than $3\frac{1}{2}$ inches over the western bound-

ary.   It appears upon the evidence that the property was conveyed
to one Roberts in 1851, by a description which fixed the east line
at a point 93 feet west of Avenue D, and described the property
as extending thence west, on the north side of Ninth street, 25
feet, and completed the description by describing a lot 25 feet
wide, front and rear, and 92 feet 3 inches deep.    Roberts contin-
ued to own the property until some time after 1880.    In 1867, as
it appears, lot No. 116, which adjoins the lot in dispute on the
west, was also conveyed to Roberts, so that he was the owner of
both lots.    The house which stands upon the lot in question was
built, as appears, over 30 years ago, and whether, at that time, it
encroached upon the lot immediately west of it or not, there is no
doubt that after Roberts became the owner of that lot there ceased
to be any encroachment by Roberts upon anybody else's property,
but he was the owner of all the land upon which the house stood.
Such being the condition of affairs, Roberts, in the year 1880, mort-
gaged the property in dispute to the Mutual Life Insurance Com-
pany, with covenants of warranty and further assurance, by a de-
scription which is precisely like the one in the contract sought to
be enforced.    In that description the southeast corner of the lot
is fixed at a point 93 feet 2 inches west from the corner of Avenue
D and Ninth street, and the lot is described as being 92 feet 3
inches deep and 24 feet 8½ inches wide.    This description is fol-
lowed in the subsequent conveyance, which grew out of the fore-
closure of this mortgage under which the plaintiffs claim, and is
used in the contract in suit.    It appears from the testimony that,
as a matter of fact, the house in front is 93 feet 2 or 3 inches from
Avenue D, and in the rear is precisely 93 feet from that avenue.
Whichever it is, there is no doubt that it stands either within the
east line of the lot as owned by Roberts or precisely on that line.
In front the width of the house is 24 feet 6 inches or 24 feet 8¾
inches; but, whichever may be the accurate measurement, it is
still inside or upon the west boundary of the lot as conveyed to
Roberts.    In the rear the house is 25 feet wide, or 25 feet ¼ inch.
If it is 25 feet wide, it stands in the rear precisely on the west line
of the lot 115 as conveyed to Roberts; and, if it is 25 feet ¼ inch,
of course it encroaches just ¼ inch.    The condition of affairs when
the property was mortgaged by Roberts was that he owned all the
land included in lots 115 and 116.    He mortgaged this lot, upon
which stood the house, the east line of which was entirely upon
his land, and the west wall of which was also entirely upon his
land, but extended a few inches over the boundary as measured
in the description.    So we have the fact that Roberts had prac-
tically located the proper place for the wall of this house by his
own act, and upon his own land, when he had a right to so do,
and had conveyed the house by a description which misstated a
few inches the precise measurement of the house.    This is a clear
case for the rule that natural or artificial boundaries, plainly re-
ferred to, must control measurements and distances with which
they do not agree.    Meyer v. Boyd, 51 Hun, 291, 4 N. Y. Supp.
328;  Race v. Stewart, 5 App. Div. 598, 39 N. Y. Supp. 438.    In

any event Roberts did not convey more than a quarter of an inch of the land embraced in the boundaries of lot 116, even if he conveyed that much, and so small an encroachment as that is not of sufficient importance to warrant a denial of the relief which the plaintiff asks for.

When Roberts gave this mortgage under which the plaintiff claims, he executed with it covenants of warranty and for further assurance; and at that time, as is said, he owned both lots, and was therefore at liberty to convey so much of either lot as he saw fit, and locate the line of lot number 115 wherever he desired to, and his action binds the grantees of that lot from him, as also does the covenant of warranty, which is binding upon his subsequent grantees as well as upon himself. Tefft v. Munson, 57 N. Y. 97. So the location of this house, which he made when he owned both lots, is conclusive upon any person who subsequently became the owner of either; and a title taken by the description which he then gave, which included the property as it actually existed and was occupied by him, conveys a good title to the house as it then stood.

The judgment of the special term was therefore right, and should be affirmed, with costs. All concur.